The STATE OF MONTANA, Plaintiff and Respondent, v.
GARY CALLAGHAN, Defendant and Appellant.

10743

Submitted September 11, 1964. Decided November 23, 1964.

396 P.2d 821.

402

Waldo N. Spangelo (argued) Havre, for appellant.

Robert D. Morrison, Havre, Forrest H. Anderson, Helena, Arthur Ayers, Jr. (argued) Helena, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON, delivered the Opinion of the Court.

This is an appeal by the defendant from a judgment entered in the district court of Hill County following a jury verdict of guilty of the crime of robbery.

The record discloses that at about 5:00 A.M. the morning of Saturday, August 24, 1963, the defendant and one Guy Smith arrived in Chinook, Montana, after an unsuccessful trip to the southwest to look for work. They took a hotel room and slept until that afternoon when one Larry Watson arrived by car from Havre. Two guns, one owned by the defendant and one owned by Smith, were transferred from the defendant's car to Watson's car in Chinook. The evidence is conflicting on whether the defendant was aware of the transfer of the guns. The three proceeded to Watson's house in Havre and arrived about 7:00 P.M. Watson and Smith left Watson's house to go for some beer about 8:00 P.M. Just after that Watson's wife arrived home and noticed the defendant there. She inquired of the whereabouts of Watson and Smith and defendant told her they would be back soon. Watson and Smith arrived about 9:45 P.M. The two came into the house by the back door and changed clothes. All three went to the basement and upon returning to the first floor the police knocked on the door. Watson and the defendant were apprehended at that time, but Smith had slipped out the back way. The Chief of Police requested permission of Mrs. Watson to search the house and he testified that she gave her consent. Two other police officers corroborated his testimony though Mrs. Watson denied that she had given such permission. Upon a search of the home the police found bags of money in a couch in the basement.

Dave Blumfield, a Havre grocery operator, reported that he had been held up about 9:40 P.M. that night by men in a car. He reported the license number and the police located the owner as being Miss Bonnie Schroeder, the next door neighbor and friend of the Watsons. It was established that the Schroeder car was used by Watson to go to Chinook earlier in the day and that Watson and Smith used the same car to go downtown about 8:00 P.M. that evening. It also was established that it was the same car they returned in at 9:45 P.M.

The testimony conflicted in several parts, but it was evident that the defendant had been at the Watson and Schroeder homes off and on during the time the robbery took place. The defendant was charged with robbery as a principal, and was accused of aiding and abetting in the commission of the crime. Appropriate instructions were given the jury on the nature of the offense.

The defendant was convicted and sentenced to five years in the State Prison at Deer Lodge.

This appeal assigns six specifications of error:

(1)  That the verdict is contrary to law;

(2)  That the verdict is contrary to the evidence;

(3)  That the evidence is insufficient to support the verdict;

(4)  That there is a failure of proof of the crime;

(5)  That certain questioning of the defendant was prejudicial error; and

(6)  That the evidence used to convict the defendant was obtained through an illegal search and seizure. Finally, in argument the defendant objects to the failure of the original defense counsel to call Watson as a witness on behalf of the defendant.

The State has moved this court to disregard the first four specifications of error on the ground that no motion for a new trial was made at any stage of the proceedings. While there is merit to the position of the State, supported as it is by State v. Gransberry, 140 Mont. 70, 367 P.2d 766, and State

v. Bubnash, 142 Mont. 377, 382 P.2d 830, and authorities therein cited, yet a like situation was before us in State v. Moran, 142 Mont. 423, 384 P.2d 777, and because a transcript on appeal was filed without objection we did consider the sufficiency of the evidence. In this case, a bill of exceptions was settled upon stipulation, and because counsel on this appeal was not the trial counsel in the district court, we have reviewed the evidence and we find there is sufficient evidence in the record before us to sustain the verdict of the jury.

Specification of error 5 arises out of the following testimony in answer to questions put to the defendant by the County Attorney on cross-examination.

"Q. What was the circumstances surrounding the termination of your employment there? A. I had to quit.

"Q. You had to quit? A. Yes, well, to save my uncle political embarrassment so to speak.

"Q. Why did you save your uncle political embarrassment by quitting? A. I took a bottle out of the store after hours; and it was reported to the Montana State Control Board. And the head man called Bill and talked to him about it.

"Q. What time of the night was that? A. About 2 o'clock.

"Q. Did the police find you in the store at that time? A. Yes."

The testimony was elicited in reference to statements made on direct examination by defendant's counsel that defendant had quit a job he had at the liquor store prior to the job-hunting trip to the southwest. No objection was made to the cross-examination. The defendant now asserts that this line of questioning was designed to degrade the defendant and that it constituted prejudicial error. We do not agree with that contention. Appellant relies solely on the recent case of State v. Tiedemann, 139 Mont. 237, 362 P.2d 529, to establish that the testimony constitutes reversible error. That case involved a conviction for attempted rape and the county attorney read to the jury a transcribed statement made by the de-

fendant relating to a different sex offense committed against a different girl. The court found that the testimony had clearly been "designed" by the county attorney to degrade the defendant. It was not merely exploratory cross-examination such as in the instant case.

In State v. Reed, 65 Mont. 51, 210 P. 756, this court held that when testimony is admitted without objection, as here, a defendant cannot complain.

But in any event defendant's counsel had asked the defendant why he left the job at the liquor store and the defendant responded that he had quit. All that the county attorney did here was to cross-examine on this issue and ask why he had terminated his employment. This was not prejudicial error.

▆ The sixth specification of error challenges the search of the Watson home and the seizure of evidence used on the trial. No motion to suppress the evidence was made at any time, and the first objection to the use of the evidence appears here on appeal. In State v. Gotta, 71 Mont. 288, 290, 229 P. 405, 406, the arresting officer took illegal whiskey from the car of the defendant and it was used as evidence. This court stated in that case the following rule: "One wishing to preclude the use of evidence obtained through a violation of his constitutional rights must protect himself by timely action. If he has had opportunity to suppress the evidence before trial, and has failed to take advantage of his remedy, objection to the evidence upon the trial will not avail him."

This rule is not in conflict with any of the federal cases on search and seizure. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, does not provide that the constitutional safeguard is to apply regardless of whether the defendant seeks protection. Of course, if the first knowledge of the evidence comes at the trial stage then objection is proper at that time. Gouled v. United States, 225 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647.

Further, we are not satisfied that even if a motion had been made it would have been necessary to suppress this evidence because as before stated there is evidence here that consent had been given to the search. Also there is authority that even without consent the search might be considered valid. A search may be made pursuant to a valid arrest without a search warrant. United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775; Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409. It is permissible to search a dwelling where a valid arrest has been made there. Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399. The objects of such search are the fruits and instrumentalities of the crime. However, the arresting officer may not indiscriminately root through the dwelling just because there has been an arrest there. Carlo v. United States, (2nd Cir. C.A.1961) 286 F.2d 841, cert. denied, 366 U.S. 944, 81 S.Ct. 1672, 6 L.Ed.2d 855. The search must me reasonable in scope. Important elements in determining the reasonableness of a search of a dwelling incident to a valid arrest would be: degree of surprise in arrest, proximity to time of commission of the crime, size and kind of objects sought in relation to the crime, and the availability of places to hide the objects in the dwelling. The officers searched the most likely places in the house where bags of money, masks, and guns might be hidden. The lights in the basement had been on when the police drove up, hence, the interest in searching the basement. In light of the facts presented in the record, we do not feel that there has been an unreasonable or illegal search and seizure here.

Beyond that, the question arises as to whether defendant may claim the immunity. Only the person or persons whose rights have been infringed may claim the constitutional guaranty against unreasonable search and seizure. Casey v. United States, (C.A. 9th Cir.) 191 F.2d 1, (certiorari granted 342 U.S. 892, 72 S.Ct. 200) revd. on other grounds 343 U.S.

808, 72 S.Ct. 999, 96 L.Ed. 1317; Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed. 2d 1669; Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688. The defendant here did not have such an interest in the Watson home as to give him the right to invoke the immunity. He was a mere quest or invitee, and such interest is not sufficient. See 79 C.J.S. Searches and Seizures § 52, pp. 810-814, where numerous state and federal authorities are collected. This rule is not in conflict with any of the recent decisions by the United States Supreme Court. State v. Keeling, (Ohio Com.Pl.1962), 182 N.E.2d 60.

The final point on this appeal is not raised by specification of error, but in argument. Appellant contends that the testimony of Larry Watson might have proved valuable in that Watson might have testified that the appellant was not involved. Watson has also been tried and convicted of the crime. The gist of this contention is that the failure of the trial counsel to call Watson had the effect of leaving the idea with the jury that Watson would have implicated the defendant instead of clearing him. What Watson would have testified to is only speculative. This decision of the trial counsel was within the scope of his authority as manager of the defense and defendant is bound thereby. See State v. Noller, 142 Mont. 35, 381 P.2d 293, and cases therein cited, and State v. Turlok, 76 Mont. 549, 248 P. 169.

We wish to further state that trial counsel for defendant was admitted to practice before this court on December 9, 1922, and at the time of this trial had practiced more than forty years. During all of his career he has continuously been employed to defend those charged with crime and has the reputation at the bar of being a skillful, efficient, resourceful and competent defense counsel.

The judgment is affirmed.

MR. JUSTICES CASTLES, JOHN CONWAY HARRISON, DOYLE and ADAIR, concur.