No. 13918

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

DAVID and MAUREEN MEANS,

Defendant and Appellant.

---

Appeal from: District Court of the Fourth Judicial District,
Honorable E. Gardner Brownlee, Judge presiding.

Counsel of Record:

For Apppellant:

Smith, Connor, Van Valkenburg & Larrivee, Missoula,
Noel Larrivee argued, Missoula, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Mark Raciot, Assistant Attorney General, argued,
Helena, Montana
Robert Deschamps III, County Attorney, Missoula,
Montana

---

Submitted: March 8, 1978

Decided: MAY 31 1978

Filed: MAY    1978

Thomas J. Kearney
Clerk

Honorable Arnold Olsen, District Judge, delivered the Opinion of the Court.

Defendants appeal the judgment of the District Court, Missoula County, convicting them on two counts of criminal possession of dangerous drugs, both felonies, following a trial without a jury.

On September 27, 1976, defendant David Means entered a plea of guilty to a charge of criminal possession of dangerous drugs. He was subsequently sentenced to serve three years in the Montana state prison. Imposition of sentence was suspended and David Means was placed on probation. The judgment contained the following condition:

> "2. That the Defendant shall submit himself, his residence and vehicle to search at any time by Probation Officers, Peace Officers or other lawful authorities, without a search warrant and without the need to show probable cause."

Counsel for defendant David Means objected to the imposition of the condition at the time it was imposed as being violative of Fourth Amendment guarantees against unreasonable searches and seizures.

The facts regarding Maureen Means are the same, except the condition in question was imposed as part of a deferred prosecution agreement.

On November 8, 1976, information was received from a confidential informant which indicated to Officer Lambert of the Region One Anti-Drug Team that drug trafficking was possibly taking place at the residence of defendants. The information was related by a neighbor of defendants. The neighbor stated that numerous cars were coming to the residence, staying for short periods of time, and then leaving. As a result, Officer Lambert, on November 9, 1976, began surveillance of defendants' residence. Surveillance for six nights revealed that several people, known by the drug team to be

involved in the drug trade, were continually coming to the residence, staying for short periods of time, and leaving. Prior to this surveillance, Officer Lambert received information, which he could not corroborate, that David Means was selling dangerous drugs at the Missoula Vocational Technical School.

On December 13, 1976, Lambert decided to approach David Means and search his residence to see if he was in possession of dangerous drugs. Lambert intended to execute the search under the warrantless search clause imposed on October 14, 1976. The suppression hearing transcript clearly shows that the officers based their search on the probation condition authorizing warrantless searches and seizures. On cross-examination, Lambert was asked whether defendants requested that a search warrant be produced. The officer responded:

> "Yes, Sir. I informed him that we had suspicion to believe that there was dangerous drugs in the house and that we would search his house, and at that point the Defendant asked if we had a search warrant. At that point I reminded the Defendant that he was under probation and he had accepted as part of his probation to allow himself, residence, and vehicle to be searched at any time by a peace officer and at that time we were exercising that right."

As Officers Lambert, Victor and Wicks arrived at defendants' residence, David Means was observed walking up to the front door of the residence. David Means noticed the officers approaching and reacted quickly by going into the house and slamming the door. Officer Victor went to the rear of the house while Officers Lambert and Wicks went to the front door. Lambert and Wicks detected the odor of marijuana emanating from the house. While standing outside the door, they also heard what they thought to be a toilet flushing. After knocking, Maureen Means opened the door approximately twenty seconds thereafter.

After entering the house, Lambert and Wicks immediately proceeded to the bathroom where they found David Means standing over the toilet and observed marijuana circling in the toilet bowl as if it had been flushed. The residence was secured and the accused were informed by Lambert that he had reason to believe there were dangerous drugs in the house. The accused were instructed to sit down. Prior to taking a seat, David Means was searched by Lambert, who found a small paper packet of white powder in the shirt pocket of David Means. At that point, David Means was informed that he was under arrest. He reacted to Lambert's discovery by slapping the powder out of his hands and resisting Lambert's attempts to restrain him. After subduing David Means, the search was continued.

In the bathroom Wicks located marijuana in the toilet bowl weighing approximately 20.0 grams, as well as underneath the bathtub in a hole in the floor, which weighed 25.7 grams. Wicks also found hashish weighing 1.8 grams wrapped in a plastic bag between two mattresses on a bed in the bedroom. Victor found another paper bag of marijuana, weighing approximately 25 grams, in the back room of the house.

The marijuana and hashish were sent to the Montana State Crime Laboratory, where analyses revealed that the suspected substances were what the officers had surmised them to be. The marijuana was found to weigh 70.0 grams in total, and the hashish, 1.8 grams.

On April 27, 1977, defendants were convicted of two counts of criminal possession of dangerous drugs, following a trial without a jury. From this conviction, defendants appeal.

Defendants contend that in the instant case, the police had no probable cause, nor exigent circumstances, which would justify the warrantless search. They argue that the law enforcement offi-

-4-

cials accomplished the search and seizure strictly on the basis of the probation condition heretofore noted. Defendants maintain such a condition is unreasonable and violative of a probationer's constitutional rights, for the following reasons:

1. The consent given by a probationer to such a clause is not voluntary;

2. The condition is not reasonably related to rehabilitation; and

3. The condition is violative of a probationer's Fourth and Fifth Amendment rights.

Plaintiff contends the law enforcement officers had probable cause to believe an offense was being committed in defendants' residence and, because of the presence of exigent circumstances, were justified in entering and arresting defendants and searching defendants and their premises immediately under their control. Plaintiff thus argues that, under the facts of this case, the constitutionality of the warrantless search and seizure condition of parole and probation status is irrelevant. We agree.

Section 95-608, R.C.M. 1947, states:

"A peace officer may arrest a person when:

"* * *

"(d) He believes on reasonable grounds, that the person is committing an offense or that the person has committed an offense and the existing circumstances require his immediate arrest."

In addition section 95-702(c) and (d), R.C.M. 1947, state:

"* * *a peace officer may search the person arrested and the area within such person's immediate presence for the purpose of:

" * * *

"(c) Discovering and seizing the fruits of the crime, or

"(d) Discovering and seizing any persons, instruments, articles or things which may have been used in the commission of, or which may constitute evidence of, the offense."

-5-

Although no definitive rulings of this Court have been made involving these specific facts, this Court has previously dealt with cases considering whether the odor of marijuana is a factor contributing to probable cause for search and arrest, in State v. Hull, (1972), 158 Mont. 6, 487 P.2d 1314 and State v. Bennett, (1972), 158 Mont. 496, 493 P.2d 1077.

In Hull this Court determined defendant's arrest was based on reasonable grounds, in compliance with section 95-608(d), R.C.M. 1947, where prior to their entry arresting officers had received information that a "pot party" was in progress, the defendant was a guest at the party and the aroma of burning or burnt marijuana was emanating from the residence. The officers entered the residence and arrested several persons, one of whom was defendant, even though no marijuana was observed visually by the officers at the time of their entry. A search of defendant yielded an amphetamine tablet. The entry into the house, the arrest of the occupants, and the search of their persons and the premises was conducted without either an arrest or search warrant. Yet the Court determined the entry into the residence for purposes of effecting an arrest and searching defendant incident to that arrest constitutionally and statutorily permissible.

In Bennett officers had received information indicating drug activity was taking place at defendant's apartment. They had also received information that one of the defendants was a drug dealer. Based upon this information, the officers went to the apartment to investigate. When they arrived, they observed one defendant, a suspected drug dealer, enter the apartment. When the officers approached the apartment, they noticed the odor of burning marijuana emanating from the open door of the apartment. The officers entered the apartment, walked up a short flight of stairs, and observed the defendants sitting around a table upon which was mari-

-6-

juana. The defendants were immediately arrested and the marijuana seized. The Court held the entry into the apartment to arrest and the search incident thereto constitutionally permissible.

It is clear that Hull and Bennett stand for the proposition that the odor of burning or burnt marijuana, together with other facts tending to establish probable cause, is sufficient justification for an officer to enter the residence for the purpose of effecting an arrest and searching incident thereto.

There are additional cases from other jurisdictions, particularly cogent to our inquiry herein.

In People v. Bock Leung Chew, (1956), 142 Cal.App.2d 400, 298 P.2d 118, two officers had entered an apartment building, and were proceeding to a certain apartment when, walking by the door to the defendant's apartment, they smelled opium. The officers were admitted to the apartment by the defendant's wife, the sole person present. The officers searched the premises and, under the kitchen cupboard, found smoking opium. The officers searched the premises from 9:15 p.m. until 11:00 p.m., having neither a search warrant nor a warrant of arrest. The California Court held that where officers detect the odor of a substance, the possession of which constitutes a felony, they are justified in believing an offense is being committed in their presence and can make immediate entry into the residence from which the odor emanates and search such residence without first procuring a warrant. 298 P.2d 119.

Similarly, in Vaillancourt v. Superior Court for County of Placer, (1969), 273 Cal.App.2d 791, 78 Cal.Rptr. 615, the Court held that police officers had probable cause to enter a hotel room and effect an arrest when walking down the hotel hallway, they detected the smell of burning marijuana. The Court further stated that the smell indicated the contraband was, in fact, being destroyed.

Relying specifically on People v. Bock Leung Chew, supra, is State v. McGuire, (1971), 13 Ariz.App. 539, 479 P.2d 187. In McGuire an officer was informed that the smell of burning marijuana was coming from an apartment. The officer, upon approaching the apartment door, also detected the odor. He further noted a commotion in the apartment before the door was opened, and heard the flushing of a toilet. The officer ran into the apartment bathroom after admittance, where he found a marijuana cigarette floating in the toilet. In holding that the officer had probable cause to enter and arrest, the Arizona court stated:

> "The weight of authority, and we believe the better rule, holds that the offense is committed in the presence of an officer 'when the officer received knowledge of the commission of an offense in his presence through any of his senses.' * * *

> "The evidence amply demonstrates probable cause for the arrest, namely: Schmale's complaint verified by the strong odor of burning marijuana detected by Wingfield. The prompt police action, frustrating the attempted destruction of contraband, was reasonable and incidental to a lawful arrest." 479 P.2d 189.

The identical rationale appears in current cases, as well. In State v. Zamora, (1977), 114 Ariz. 75, 559 P.2d 195, the defendant on appeal, contested the validity of the search of the trunk of his automobile based upon the "very faint" odor of marijuana detected by the arresting officer, who had initially stopped the vehicle for a speeding violation. The court affirmed the validity of the search. 559 P.2d 197.

Under the facts of the instant case, in addition to the odor of marijuana and the flushing of the toilet, which contributed to the evidence of probable cause to arrest, there existed the furtive conduct of David Means observed by Officers Lambert and Wicks. A furtive movement or gesture, in combination with other suspicious circumstances, can provide legal justification for a search by the officer observing the conduct. People v. Powell, (1974), 40 Cal.App.3d 107, 115 Cal.Rptr. 109; People v. Conley (1971), 21 Cal.App.3d 894, 98 Cal.Rptr. 869.

-8-

We answer in the affirmative the question of whether probable cause to believe an offense was being committed existed, thus permitting a warrantless entry into defendants' residence to search and arrest. The prior knowledge of defendants' illicit drug involvement, the informant's reports concerning David Means' drug enterprise at the Missoula Vocational Technical School, the surveillance of defendants' residence, the observance of the unusual strategy of Maureen Means noted during the surveillance, the furtive conduct of David Means when confronted by the police on December 13, 1976, the recognition of the odor of marijuana by Officers Lambert and Wicks, the delay in opening the door, and hearing the flushing of the toilet, when considered together, can leave no doubt that probable cause existed to enter defendants' residence to search and arrest.

Defendants rely heavily upon the case of Johnson v. United States, (1948), 333 U.S. 10, 68 S.Ct. 367, 92 L.ed. 436, to support their contention that a warrant to search should have been obtained by Officer Lambert. The facts of Johnson are substantially similar to those of the instant case. The reliance by defendants upon Johnson, however, is somewhat misplaced. The United States Supreme Court did suppress the evidence seized in Johnson, but did not indicate that a warrant must be procured to enter a dwelling in every event. The Court stated:

> "There are exceptional circumstances in which,
> on balancing the need for effective law enforce-
> ment against the right of privacy, it may be
> contended that a magistrate's warrant for search
> may be dispensed with. But this is not such a
> case. No reason is offered for not obtaining
> a search warrant except the inconvenience to the
> officers and some slight delay necessary to pre-
> pare papers and present the evidence to a magis-
> trate. * * * No suspect was fleeing or likely to
> take flight. The search was of permanent prem-
> ises, not of a movable vehicle. No evidence or
> contraband was threatened with removal or de-
> struction, except perhaps the fumes which we
> suppose in time would disappear. * * *" 92 L.ed.
> 440-441.

-9-

Thus, the Court inferred, and in fact it has been so held by other courts, that had any one of those exceptional circumstances been present, no need for a magistrate's warrant would have existed. In the case presently before us, there did exist a suspect who was fleeing, and contraband or evidence which was threatened with removal or destruction. It was proper, then, even under the rationale of Johnson, to proceed without a warrant in this case.

Further, the prosecution in Johnson conceded the arresting officer did not have probable cause to arrest until he entered the defendant's apartment, thereby precluding the Court from considering the threshold question of whether the officer was justified in entering without a warrant to arrest, and the corollary question of whether the search was incident to that arrest.

The State makes no such concession here. Rather the State contends probable cause to arrest existed before the police ever set one foot inside defendants' residence. Johnson is therefore inapplicable here, except insofar as the facts of this case fall within the "execptional circumstances" rule. As this Court stated in State v. Bennett:

> "Since Johnson in 1948, courts have recognized
> exceptional circumstances which permit entry and
> arrest and expand the narrow view adopted in
> Johnson. * * * " 158 Mont. 502.

If probable cause to arrest exists before the search takes place, it is immaterial that the search preceded the actual arrest, provided that the search and arrest are part of one continuous transaction. This rule is grounded on the common sense principles that it is often difficult to pinpoint the precise moment of arrest, and that it is often necessary, because of exigent circumstances, to search first, in order to safeguard evidence, and then make the formal arrest. State v. Barnes, (1976), 220 Kan. 25, 551 P.2d 815; People v. Wright, (1969), 273 Cal.App.2d 325, 78 Cal.Rptr. 75.

In addition to verbalizing the rule in the manner described above, the court in _Barnes_ explained the rationale behind the rule as follows:

> "* * * Under these circumstances a search of defendant's person was held valid and evidence obtained from the search was admissible at trial. The justification for such an intrusion is the probable cause to believe that the individual has committed a crime and the need for immediate action to prevent the use of weapons against the arresting officer or destruction of evidence of the crime. (Citing cases.) Postponement of the further intrusion of arrest does not remove the justification for the search and in no way prejudices the individual's Fourth Amendment rights." 551 P.2d 819.

Such is precisely what occurred in the instant case. Officer Lambert had probable cause to believe defendants had committed or were committing a crime in his presence. He also had a reason to believe that evidence or contraband was threatened with removal or destruction, thereby mandating immediate action to prevent such removal or destruction. As a result, Officer Lambert did not arrest defendants until after the search had begun, choosing instead to preserve the evidence or contraband first, and then to effect an arrest. As the cases above indicate, this method of proceeding in no way taints the evidence seized prior to the actual arrest.

We further conclude the search of defendants' residence was within the scope of a search incident to an arrest.

The case of State v. Callaghan, (1964), 144 Mont. 401, 396 P.2d 821, settled the law in Montana relating to the scope of the area to be searched incident to an arrest. This Court, in _Callaghan_, stated:

> "* * * A search may be made pursuant to a valid arrest without a search warrant. United States v. Lefkowitz, 285 U.S. 452 (1932); Agnello v. United States, 296 U.S. 20 (1925); 51 A.L.R. 409. It is permissible to search a dwelling where a valid arrest had been made there. Harris v. United States, 331 U.S. 145 (1947). The objects of such a search are the fruits and instrumentalities of the crime. However, the arresting

-11-

> officer may not indiscriminately root through the dwelling just because there has been an arrest there. Carlo v. United States, (2nd Cir. C.A. 1961), 286 F.2d 841, cert. denied, 366 U.S. 944. The search must be reasonable in scope." 144 Mont. 407.

This Court found the search of the dwelling in Callaghan reasonable where two men had been arrested in the premises, and the search was one of the most likely places where the fruits and instrumentalities of the crime might be hidden.

Here, the scope of the search was for fruits and instrumentalities of the crime, as provided for by section 95-702, R.C.M. 1947, and was reasonable as mandated by Callaghan. The officers did not root through the dwelling simply because of the arrest, but rather searched the most likely places of hiding.

Callaghan defines the arrestee's dwelling, under the circumstances present there, as that within his immediate presence, which in turn is referred to in section 95-702 as the permissible scope of such a search. Likewise, the search here of defendants' dwelling, because of the circumstances, was a search of an area within their immediate presence. We find the search as conducted here did not infringe upon defendants' constitutional or statutory rights. Based upon the foregoing, the search of defendants' residence was not unreasonable, nor overly broad in scope.

As both the search and arrest were conducted in a constitutionally permissible manner, we affirm the judgment convicting defendants on both counts of criminal possession of dangerous drugs.

We note there was much emphasis in argument by counsel for the parties, and in questions from this Court concerning the validity of a condition of probation authorizing a warrantless search of probationers. As our holding above disposes of this case, this issue need not be reached in this opinion. However, we determine that limited discussion of a central facet of this issue is necessary.

Defendants contend that execution of a probationer search clause by law enforcement officers can never be a proper condition of probation. In so arguing, defendants rely primarily upon the decision in United States v. Consuelo-Gonzalez, (9th Cir. 1975), 521 F.2d 259, wherein it was held that execution of a search clause by law enforcement personnel was not in keeping with the Federal Probation Act, 18 U.S.C. §1351, as amended, although execution of such a clause by a probation officer is in keeping with the Act.

The distinction between probation and police officers is attributable to the fact that the Federal Probation Act has been interpreted by the federal courts as emphasizing reformation and rehabilitation, rather than contemplating the dual objectives of rehabilitation and protection of the public.

The Montana sentencing statute, section 95-2206, R.C.M. 1947, states that any reasonable conditions deemed necessary for rehabilitation or for the protection of society may be imposed. Either or both of these objectives may be considered when imposing sentence. This statute has at no time been interpreted to emphasize rehabilitation alone, as has the Federal Probation Act. Thus, we conclude a search clause as a condition of probation need not relate solely to the objective of rehabilitation. The court, in Consuelo-Gonzalez, admitted as much in stating:

> "* * * It is obvious, however, that opinions differ as to what controls are improper, and we express no opinion here regarding the extent to which the states constitutionally may impose conditions more intrusive on the probationer's privacy than those we here have indicated are proper under the Federal Probation Act. * * *" 521 F.2d 266.

Nonetheless, the distinction drawn by the court in Consuelo-Gonzalez does nothing but encourage law enforcement personnel to go to the probation officer, who can then search the probationer pursuant to the search clause. In our view, such a procedure is nothing more than an unnecessary game of obstruction. There is no doubt that

-13-

inquiry into the private life of a probationer is a necessary prerequisite to rehabilitation. As stated by the court in Consuelo-Gonzalez, "Probation authorities also have a special and unique interest in invading the privacy of probationers." 521 F.2d 266.

The more rational approach is that outlined in People v. Bremmer, (1973), 30 Cal.App.3d 1058, 106 Cal.Rptr. 797:

> "* * * A condition of probation that subjects a convicted person to search and seizure at any time may serve a useful purpose by providing a workable alternative to imprisonment of the convicted person. Patently, the constitutional rights of a probationer--like the rights of those convicts who have been imprisoned--are circumscribed by the judgment of conviction and are not coterminous with those possessed by persons whose status remains unimpaired by conditions of probation imposed by court order. The probationer, like the parolee, has what is euphemistically known as a reduced expectation of privacy. (Citing cases.) * * *" 106 Cal.Rptr. 800.

In addressing the situation involving execution of a search clause by a police officer, the court in Bremmer noted:

> "Since a peace officer's primary concern lies with enforcement of the law and not with rehabilitation of a probationer, the officer's exercise of authority is ordinarily activated by violations, or seeming violations, of public order and safety. When a known probationer subject to warrantless search is discovered conducting himself in a manner that suggests a resumption of the misconduct that brought about the condition of probation, a peace officer may exercise the authority of a general search order to search. The officer's search is a search on suspicion only, but a suspicion grounded on present activity as related to past performance. * * *" 106 Cal.Rptr. 802.

Under the rationale of Bremmer it is plain that the search of defendants in this case was reasonable. The search conducted here not only protected the public, but promoted the rehabilitation of defendants as well. All have agreed that defendants have benefited considerably from the experience of this case.

We therefore conclude that execution of a probationer search clause by law enforcement personnel, being instrumental in

achieving the objectives of probation, is a proper condition of probation.

The judgment of conviction is therefore affirmed.

Honorable Arnold Olsen, District
Judge, sitting in the vacant seat
on the Court.

We Concur:

Chief Justice

Justices

-15-

Mr. Justice Gene B. Daly dissenting:

I cannot disagree that the majority had the option to resolve this case on nonconstitutional grounds, if the same existed, and avoid ruling on the constitutional grounds presented by defendants. However, the majority involves itself in a long discussion of probable cause and at the conclusion makes a sweeping all inclusive ruling on the constitutional questions presented without discussion or authority, except for a Ninth Circuit case which is against the majority's views, United States v. Consuelo-Gonzalez, 521 F.2d 259, and a California case which is not strong authority inasmuch in State v. Merlin T. Battit, ____Mont.____, 574 P.2d 998, 35 St. Rep. 154 (1978), this Court rejected the California approach to this problem and followed more rational jurisdictions.

The foundation questions presented to this Court for review are:

I. Whether a condition of probation authorizing unlimited search and seizure by law enforcement officers violates constitutional guaran tees against unreasonable searches and seizures.

A. Defendant's consent to unlimited search and seizure by law enforcement officers was not freely and voluntarily.given.

B. A condition of probation authorizing unlimited search and seizure by law enforcement officers is contrary to the purpose of probation as a rehabilitative and reformative process.

C. The warrantless search of the defendant's residence was unreasonable because it was unsupported by exigent circumstances.

- 16 -

II. A condition of probation authorizing unlimited search and seizure by law enforcement officers violates constitutional guarantees against self-incrimination.

The problem is presently in the early stages of development and definition by the courts. As an example neither the United States Supreme Court nor this Court has studied the matter or expressed an opinion. There exists a general split of authority among the courts that have treated the issue and the trend seems to be toward expanding a probationer's sphere of Fourth Amendment protection. In any event the legal problems involved are serious and many. They concern basic human rights that are too fragile to be summarily disposed of in the cavalier manner engaged by the majority here.

Mr. Justice Frankfurter stated in Wolf v. Colorado, (1949), 338 U.S. 25,27, 69 S.Ct. 1359, 93 L ed 2d 1782, 1785, that the Fourth Amendment protects the "security of one's privacy against arbitrary intrusion by the police." A more recent case, Tehan v. Shott, (1966), 382 U.S. 406, 416, 86 S.Ct. 459, 15 L ed 2d 453,460, reiterated:

> "* * * the guarantees of the Fourth Amendment, stands as a protection of quite different constitutional values -- values reflecting the concern of our society for the right of each individual to be let alone. To recognize this is no more than to accord those values undiluted respect."

The California courts have taken the position that a probationer enjoys only a limited expectation of traditional Fourth Amendment protection, and have endorsed the use of the warrantless search clause as a condition of probation. People v. Bremmer, (1973), 30 Cal.App.3d 1058, 106 Cal.Rptr. 797; People v. Mason, (1971), 97 Cal.Rptr. 302, 488 P.2d 630.

However, the Ninth Circuit Court of Appeals recently stated in United States v. Consuelo-Gonzalez, 521 F.2d 259, 265, (9th Cir. 1975), that "A probationer, like the parolee, has the right to enjoy a significant degree of privacy." Further, that a defendant's submission to warrantless searches "should not be the price of probation." (Emphasis added.)

More recent state court decisions have adopted the position that warrantless search clauses as a condition of probation represent an undue infringement upon the probationer's constitutional rights. State v. Page, (1976), 115 Ariz. 131, 564 P.2d 82; Tamez v. State, (Tex.Cr.App. 1976), 534 S.W.2d 686, 692; People v. Peterson, (1975), 62 Mich.App. 258, 233 N.W.2d 250; State v. Gansz, (Fla.App. 1974), 297 S.2d 614.

In Tamez the Texas Court of Criminal Appeals stated:

"* * * We conclude that the probationary condition in the instant case is too broad, too sweeping and infringes upon the probationer's rights under the Fourth and Fourteenth Amendments to the United States Constitution * * *. The condition imposed would literally permit searches, without probable cause or even suspicion, of the probationer's person, vehicle or home at any time, day or night, by any peace officer, which could not possibly serve the ends of probation. For example, an intimidating and harassing search to serve law enforcement ends totally unrelated to either his prior conviction or his rehabilitation is authorized by the probationary condition. A probationer, like a parolee, has the right to enjoy a significant degree of privacy." (Emphasis added.) 534 S.W.2d 692.

In holding a similar probationary condition invalid in Gansz, the Florida Appellate court reasoned:

"The Fourth Amendment puts a restraint on the arm of the government and prevents it from invading the sanctity of a man's home or his private quarters except under safeguards calculated to prevent oppression and abuse of authority." 297 S.2d 616.

Striking down a search clause imposed upon a probationer the Michigan Court of Appeals in Peterson, stated emphatically:

"Our research has uncovered many cases from other jurisdictions which sustained the same imposition of consent to warrantless searches and seizures as were here imposed.  However, the waiver of protection against unreasonable searches and seizures is so repugnant to the whole spirit of the Bill of Rights as to make it alien to the essence of our form of government."  (Emphasis added.) 233 N.W.2d 255.

In Page  the Arizona Supreme Court agreed with the defendant's contention that because the search clause imposed upon her as a condition of probation gave any peace officer the authority to seize and search her person or property without a warrant at his unfettered whim, it held the condition overbroad and invalid.  The court noted:

"Although the record does not reflect that any search has yet been conducted * * * we nevertheless decide the issue presented because of the fact that defendant's Fourth and Fourteenth Amendment rights have been and are being reduced by the Court's existing provision." 564 P.2d 83, Footnote 1.

A probationer does have a right to privacy.  Tamez v. State, supra.  In addition, the United States Supreme Court has recognized a right of personal privacy does exist under the Constitution.  Griswold v. Connecticut, (1965), 381 U.S. 479, 486, 85 S.Ct. 1678, 14 L ed 2d 510.

Montana expressly recongized the right to privacy.  It is found in its 1972 Constitution, Article II, Section 10:

"The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest."

Speaking on the importance of having this right incorporated into the 1972 Montana Constitution, the Convention's Bill of Rights Committee stated:

- 19 -

"* * * the right of privacy is a right that is not expressly stated in either the United States or the Montana Constitutions. It is our feeling on the Bill of Rights Committee that the times have changed sufficiently that this important right should now be recognized. * * * In our early history, of course, there was no need to expressly state that an individual should have a right of privacy. Certainly, back in 1776, 1789, when they developed our bill of rights, the search and seizure provisions were enough, when a man's home was his castle and the state could not intrude upon this home without the procuring of a search warrant with probable cause being stated before a magistrate and a search warrant being issued. No other protection was necessary and this certainly was the greatest amount of protection that any free society had given its individuals. In that type of a society, of course, the neighbor was maybe three or four miles away. There was no real infringement upon the individual and his right of privacy. However, today we have observed an increasingly complex society and we know our area of privacy has decreased, decreased and decreased. * * * as a participating member of society, we all recognize that the state must come into our private lives at some point, but what it says is, don't come into our private lives unless you have a good reason for being there. We feel that this, as a mandate to our government, would cause a complete re-examination and guarantee our individual citizens of Montana this very important right -- the right to be let alone, and this has been called the most important right of them all." Montana Constitutional Convention, Transcript of Proceedings, Vol. 7, 5179-5182 (1972).

Courts holding that a probationary condition allowing unlimited search and seizure by law enforcement officers as valid have generally justified their decisions on the rationale that a defendant waives Fourth Amendment protection by consenting to the terms of probation. See: People v. Mason, supra. The crucial issue regarding such a waiver of Fourth Amendment rights is whether a defendant's consent to such terms and under such conditions can be characterized as free and voluntary, that is, free from any coercive influence.

A study of recent cases outlining the requirements of a consent search should begin with State v. LaFlamme, (1976), _____Mont._____, 551 P.2d 1011, 33 St.Rep. 632. The Court cited Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L ed 2d

797, as controlling and restated the rule handed down in Channel

v. United States, (9th Cir. 1960), 285 F.2d 217, 219:

> "A search and seizure may be made without a
> search warrant if the individual freely and in-
> telligently gives his unequivocal and specific
> consent to the search, uncontaminated by any
> duress or coercion, actual or implied. The Govern-
> ment has the burden of proving by clear and posi-
> tive evidence that such consent was given."
> 285 F.2d 219.

In Schneckloth v. Bustamonte, (1973), 412 U.S. 218, 93 S.

Ct. 2041, 36 L ed 2d 854, 863, the Court stated:

> "* * * the Fourth and Fourteenth Amendments require
> that a consent not be coerced, by explicit or implicit
> means, by implied threat or covert force. For, no
> matter how subtly the coercion were applied, the resulting
> 'consent' would be no more than a pretext for the un-
> justified police intrusion against which the Fourth
> Amendment is directed." 36 L ed 2d 863.

The common law has always recognized a man's house as his

castle, impregnable even to its own officers engaged in the execu-

tion of its commands. Warren and Brandeis, The Right to Privacy,

4 Harvard Law Review 192, 220 (1890). The dissent in United States

v. Consuelo-Gonzalez, (9th Cir. 1975), 521 F.2d 259, 274, made

this astute observation:

> "Consent by the defendant, however, is more
> likely to be nominal than real. A convicted defendant
> will often accept almost any alternative to imprison-
> ment * * *." (Emphasis added.) 521 F.2d 274.

In People v. Peterson, (1975), 62 Mich. App. 258, 233 N.W.2d

250,255, the court held that the blanket search and seizure pro-

visions in the order of probation were invalid. The court stated:

> "* * * But when the waiver is conditioned on the
> surrender of so hallowed a right, the so-called
> choice amounts to no choice at all. We hold the
> probationer's signed acceptance thereof was in
> legal effect coerced and thus rendered nugatory."

At this point we confront authorities theorizing that

parole is an act of grace, acceptance of which entails the

voluntary surrender of curtailment of constitutional rights. This rationale is not particularly appealing. It makes constitutional rights dependent upon a kind of "contract" in which one side has all the bargaining power. A better doctrine is that the state may not attach unconstitutional conditions to the grant of state privileges, [probation].

A probationer faces a drastic choice. His alternative to giving up the constitutional right against unreasonable search and seizure is imprisonment. Choosing between the lesser of the two evils does not amount to a real choice however, it is therefore coercive.

A court's allowing a defendant to return to his own abode implies that he does not pose an immediate threat to society and is sufficiently reliable to not require daily, unlimited supervision. A probation condition allowing warrantless search "at any time of day or night" condones such arbitrary supervision.

Montana's statutes express the dominant purpose of rehabilitation through sentences. Under section 95-2206, R.C.M. 1947, a court upon sentencing may impose "any reasonable restrictions", including:

"* * *

"(iii) conditions for probation;
" * * *
"(v) any other reasonable conditions considered
necessary for rehabilitation or for the protection
of society * * *."

A wise judge once said and it applies here, that such searches measure the effectiveness of rehabilitation in the same manner that one fells a tree to measure its age. It is high time that we reocgnize that a person must have the freedom to be responsible, if he is to become responsibly free.

I conclude with the admonition that in addition to the brief recital here, there are many more problems related to those mentioned herein that necessarily need consideration before Montana can assume a respectable position in the matter. We must also consider the rights of those who reside with a probationer -- his wife, children, mother and others. These problems do not go away by just ignoring them.

I conclude that the judgment of the District Court be reversed and the search clause, at least in its present form and application be rendered void and unenforceable for the reasons given here.

_____
Justice.

Mr. Justice Daniel J. Shea dissenting:

I concur in the dissent of Justice Daly.

It is unfortunate that the majority grounds a part of its decision on probable cause when it recognizes that the police were not proceeding to search the home pursuant to a belief that they had probable cause. Rather, they searched the home pursuant to the search clause in the conditions of probation.

I do not believe that the police should be permitted to buttress their justification of the search by their after the fact determination that they had probable cause. If the police searched the home pursuant to the search clause, it should not matter that incidentally and in hindsight they decide that they had probable cause to search without a search warrant and without the search clause provision. The only issue this Court should have decided is the validity of the search clause provision in the conditions of probation.

Justice.