ARNOLD OLSEN, District Judge,
sitting in the vacant seat on the Court, delivered the opinion of the Court.
Defendants appeal the judgment of the District Court, Missoula County, convicting them on two counts of criminal possession of dangerous drugs, both felonies, following a trial without a jury.
On September 27, 1976, defendant David Means entered a plea of guilty to a charge of criminal possession of dangerous drugs. He *195 was subsequently sentenced to serve three years in the Montana state prison. Imposition of sentence was suspended and David Means was placed on probation. The judgment contained the following condition:
“2. That the Defendant shall submit himself, his residence and vehicle to search at any time by Probation Officers, Peace Officers or other lawful authorities, without a search warrant and without the need to show probable cause.”
Counsel for defendant David Means objected to the imposition of the condition at the time it was imposed as being violative of Fourth Amendment guarantees against unreasonable searches and seizures.
The facts regarding Maureen Means are the same, except the condition in question was imposed as part of a deferred prosecution agreement.
On November 8, 1976, information was received from a confidential informant which indicated to Officer Lambert of the Region One Anti-Drug Team that drug trafficking was possibly taking place at the residence of defendants. The information was related by a neighbor of defendants. The neighbor stated that numerous cars were coming to the residence, staying for short periods of time, and then leaving. As a result, Officer Lambert, on November 9, 1976, began surveillance for six nights revealed that several people, known by the drug team to be involved in the drug trade, were continually coming to the residence, staying for short periods of time, and leaving. Prior to this surveillance, Officer Lambert received information, which he could not corroborate, that David Means was selling dangerous drugs at the Missoula Vocational Technical School.
On December 13, 1976, Lambert decided to approach David Means and search his residence to see if he was in possession of dangerous drugs. Lambert intended to execute the search under the warrantless search clause imposed on October 14, 1976. The suppression hearing transcript clearly shows that the officers based their search on the probation condition authorizing warrantless *196 searches and seizures. On cross-examination, Lambert was asked whether defendants requested that a search warrant be produced. The officer responded:
“Yes, Sir. I informed him that we had suspicion to believe that there was dangerous drugs in the house and that we would search his house, and at that point the Defendant asked if we had a search warrant. At that point I reminded the Defendant that he was under probation and he had accepted as part of his probation to allow himself, residence, and vehicle to be searched at any time by a peace officer and at that time we were exercising that right.”
As Officers Lambert, Victor and Wicks arrived at defendants’ residence, David Means was observed walking up to the front door of the residence. David Means noticed the officers approaching and reacted quickly by going into the house and slamming the door. Officer Victor went to the rear of the house while Officers Lambert and Wicks went to the front door. Lambert and Wicks detected the odor of marijuana emanating from the house. While standing outside the door, they also heard what they thought to be a toilet flushing. After knocking, Maureen Means opened the door approximately twenty seconds thereafter.
After entering the house, Lambert and Wicks immediately proceeded to the bathroom where they found David Means standing over the toilet and observed marijuana circling in the toilet bowl as if it had been flushed. The residence was secured and the accused were informed by Lambert that he had reason to believe there were dangerous drugs in the house. The accused were instructed to sit down. Prior to taking a seat, David Means was searched by Lambert, who found a small paper packet of white powder in the shirt pocket of David Means. At that point, David Means was informed that he was under arrest. He reacted to Lambert’s discovery by slapping the powder out of his hands and resisting Lambert’s attempt to restrain him. After subduing David Means, the search was continued.
In the bathroom Wicks located marijuana in the toilet bowl weighing approximately 20.0 grams, as well as underneath the *197 bathtub in a hole in the floor, which weighed 25.7 grams. Wicks also found hashish weighing 1.8 grams wrapped in a plastic bag between two mattresses on a bed in the bedroom. Victor found another paper bag of marijuana, weighing approximately 25 grams, in the back room of the house.
The marijuana and hashish were sent to the Montana State Crime Laboratory, where analyses revealed that the suspected substance were what the officers had surmised them to be. The marijuana was found to weigh 70.0 grams in total, and the hashish, 1.8 grams.
On April 27, 1977, defendants were convicted of two counts of criminal possession of dangerous drugs, following a trial without a jury. From this conviction, defendants appeal.
Defendants contend that in the instant case, the police had no probable cause, nor exigent circumstances, which would justify the warrantless search. They argue that the law enforcement officials accomplished the search and seizure strictly on the basis of the probation condition heretofore noted. Defendants maintain such a condition is unreasonable and violative of a probationer’s constitutional rights, for the following reasons:
1. The consent given by a probationer to such a clause is not voluntary;
2. The condition is not reasonably related to rehabilitation; and
3. The condition is violative of a probationer’s Fourth and Fifth Amendment rights.
Plaintiff contends the law enforcement officers had probable cause to believe an offense was being committed in defendants’ residence and, because of the presence of exigent circumstances, were, justified in entering and arresting defendants and searching defendants and their premises immediately under their control. Plaintiff thus argues that, under the facts of this case, the constitutionality of the warrantless search and seizure condition of parole and probation status is irrelevant. We agree.
Section 95-608, R.C.M.1947, states:
“A peace officer may arrest a person when:
*198 “ * * *
“(d) He believes on reasonable grounds, that the person is committing an offense or that the person has committed an offense and the existing circumstances require his immediate arrest.”
In addition section 95-702(c) and (d), R.C.M. 1947, state:
“* * * a peace officer may reasonably search the person arrested and the area within such person’s immediate presence for the purpose of:
<<* * Me
“(c) Discovering and seizing the fruits of the crime, or
“(d) Discovering and seizing any persons, instruments, articles or things which may have been used in the commission of, or which may constitute evidence of, the offense.”
Although no definitive rulings of this Court have been made involving these specific facts, this Court has previously dealt with cases considering whether the odor of marijuana is a factor contributing to probable cause for search and arrest, in State v. Hull (1972), 158 Mont. 6, 487 P.2d 1314 and State v. Bennett, (1972), 158 Mont. 496, 493 P.2d 1077.
In Hull this Court determined defendant’s arrest was based on reasonable grounds, in compliance with section 95-608(d), R.C.M.1947, where prior to their entry arresting officers had received information that a “pot party” was in progress, the defendant was a guest at the party and the aroma of burning or burnt marijuana was emanating from the residence. The officers entered the residence and arrested several persons, one of whom was defendant, even though no marijuana was observed visually by the officers at the time of their entry. A search of defendant yielded an amphetamine tablet. The entry into the house, the arrest of the occupants, and the search of their persons and the premises was conducted without either an arrest or search warrant. Yet the Court determined the entry into the residence for purpose of effecting an arrest and searching defendant incident to that arrest constitutionally and statutorily permissible.
*199 In Bennett officers had received information indicating drug activity was taking place at defendant’s apartment. They had also received information that one of the defendants was a drug dealer. Based upon this information, the officers went to the apartment to investigate. When they arrived, they observed one defendant, a suspected drug dealer, enter the apartment. When the officers approached the apartment, they noticed the odor of burning marijuana emanating from the open door of the apartment. The officers entered the apartment, walked up a short flight of stairs, and observed the defendants sitting around a table upon which was marijuana. The defendants were immediately arrested and the marijuana seized. The Court held the entry into the apartment to arrest and the search incident thereto constitutionally permissible.
It is clear that Hull and Bennett stand for the proposition that the odor of burning or burnt marijuana, together with other facts tending to establish probable cause, is sufficient justification for an officer to enter the residence for the purpose of effecting an arrest and searching incident thereto.
There are additional cases from other jurisdictions, particularly cogent to our inquiry herein.
In People v. Bock Leung Chew, (1956), 142 Cal.App.2d 400, 298 P.2d 118, two officers had entered an apartment building, and were proceeding to a certain apartment when, walking by the door to the defendant’s apartment, they smelled opium. The officers were admitted to the apartment by the defendant’s wife, the sole person present. The officers searched the premises and, under the kitchen cupboard, found smoking opium. The officers searched the premises from 9:15 p.m. until 11:00 p.m. having neither a search warrant nor a warrant of arrest. The California Court held that where officers detect the odor of a substance, the possession of which constitutes a felony, they are justified in believing an offense is being committed in their presence and can make immediate entry into the residence from which the odor emanates and search such residence without first procuring a warrant. 298 P.2d 119.
Similarly, in Vaillancourt v. Superior Court for County of *200 Placer, (1969), 283 Cal.App.2d 791, 78, Cal.Rptr. 615, the Court held that police officers had probable cause to enter a hotel room and effect an arrest when walking down the hallway, they detected the smell of burning marijuana. The Court further stated that the smell indicated the contraband was, in fact, being destroyed.
Relying specifically on People v. Bock Leung Chew, supra, is State v. McGuire, (1971), 13 Ariz.App. 539, 479 P.2d 187. In McGuire an officer was informed that the smell of burning marijuana was coming from an apartment. The officer, upon approaching the apartment door, also detected the odor. He further noted a commotion in the apartment before the door was opened, and heard the flushing of a toilet. The officer ran into the apartment bathroom after admittance, where he found a marijuana cigarette floating in the toilet. In holding that the officer had probable cause to enter and arrest, the Arizona court stated:
“The weight of authority, and we believe the better rule, holds that the offense is committed in the presence of an officer ‘when the officer receives knowledge of the commission of an offense in his presence through any of his senses.’ * * * “The evidence amply demonstrates probable cause for the arest, namely: Schmale’s complaint verified by the strong odor of burning marijuana detected by Wingfield. The prompt police action, frustrating the attempted destruction of contraband, was reasonable and incidental to a lawful arrest.” 479 P.2d 189.
The identical rationale appears in current cases, as well. In State v. Zamora, (1977), 114 Ariz. 75, 559 P.2d 195, the defendant on appeal, contested the validity of the search of the trunk of his automobile based upon the “very faint” odor of marijuana detected by the arresting officer, who had initially stopped the vehicle for a speeding violation. The court affirmed the validity of the search. 559 P.2d 197.
Under the facts of the instant case, in addition to the odor of marijuana and the flushing of the toilet, which contributed to the evidence of probable casue to arrest, there existed the furtive conduct of David Means observed by Officers Lambert and Wicks. A *201 furtive movement or gesture, in combination with other suspicious circumstances, can provide legal justification for a search by the officer observing the conduct. People v. Powell, (1974), 40 Cal.App.3d 107, 115 Cal.Rptr. 109; People v. Conley (1971), 21 Cal.App.3d 894, 98 Cal.Rptr. 869.
We answer in the affirmative the question of whether probable cause to believe an offense was being committed existed, thus permitting a warrantless entry into defendants’ residence to search and arrest. The prior knowledge of defendants’ illicit drug involvement, the informant’s report concerning David Means’ drug enterprise at the Missoula Vocational Technical School, the surveillance of defendants’ residence the observance of the unusual strategy of Maureen Means noted during the surveillance, the furtive conduct of David Means when confronted by the police on December 13, 1976, the recognition of the odor of marijuana by Officers Lambert and Wicks, the delay in opening the door, and hearing the flushing of the toilet, when considered together, can leave no doubt that probable cause existed to enter defendants’ residence to search and arrest.
Defendants rely heavily upon the case of Johnson v. United States, (1948), 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436, to support their contention that a warrant to search should have been obtained by Officer Lambert. The facts of Johnson are substantially similar to those of the instant case. The reliance by defendants upon Johnson, however, is somewhat misplaced. The United States Supreme Court did suppress the evidence seized in Johnson, but did not indicate that a warrant must be procured to enter a dwelling in every event. The Court stated:
“There are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate’s warrant for search may be dispensed with. But this is not such a case. No reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a a magistrate. * * * No suspect was fleeing or *202 likely to take flight. The search was of permanent premises, not of a movable vehicle. No evidence or contraband was threatened with removal or destruction, except perhaps the fumes which we suppose in time would disappear. * * *” 333 U.S. 14, 68 S.Ct. 369, 92 L.Ed. 440-441.
Thus, the Court inferred, and in fact it has been so held by other courts, that had any one of those exceptional circumstances been present, no need for a magistrate’s warrant would have existed. In the case presently before us, there did exist a suspect who was fleeing, and contraband or evidence which was threatened with removal or destruction. It was proper, then, even under the rationale of Johnson, to proceed without a warrant in this case.
Further, the prosecution in Johnson conceded the arresting officer did not have probable cause to arrest until he entered the defendant’s apartment, thereby precluding the Court from considering the threshold question of whether the officer was justified in entering without a warrant to arrest, and the corollary question of whether the search was incident to that arrest.
The State makes no such concession here. Rather the State contends probable cause to arrest existed before the police ever set one foot inside defendants’ residence. Johnson is therefore inapplicable here, except insofar as the facts of this case fall within the “exceptional circumstances” rule. As this Court stated in State v. Bennett:
“Since Johnson in 1948, courts have recognized exceptional circumstances which permit entry and arrest and expand the narrow view adopted in Johnson. * * *” 158 Mont. 502, 493 P.2d 1080.
If probable cause to arrest exists before the search takes place, it is immaterial that the search preceded the actual arrest, provided that the search and arrest are part of one continuous transaction. This rule is grounded on the common sense principles that it is often difficult to pinpoint the precise moment of arrest, and that it is often necessary, because of exigent circumstances, to search first, in order to safeguard evidence, and then make the formal arrest. State v. Barnes, (1976), 220 Kan. 25, 551 P.2d 815; People v. Wright, (1969), 273 Cal.App.2d 325, 78 Cal.Rptr. 75.
*203 In addition to verbalizing the rule in the manner described above, the court in Barnes explained the rationale behind the rule as follows:
“Under these circumstances a search of defendant’s person was held valid and evidence obtained from the search was admissible at trial. The justification for such an intrusion is the probable cause to believe that the individual has committed a crime and the need for immediate action to prevent the use of weapons against the arresting officer or destruction of evidence of the crime. (Citing cases.) Postponement of the further intrusion of arrest does not remove the justification for the search and in no way prejudices the individual’s Fourth Amendment rights.” 551 P.2d 819.
Such is precisely what occurred in the instant case. Officer Lambert had probable cause to believe defendants had committed or were committing a crime in his presence. He also had a reason to believe that evidence or contraband was threatened with removal or destruction, thereby mandating immediate action to prevent such removal or destruction. As a result, Officer Lambert did not arrest defendants until after the search had begun-, choosing instead to preserve the evidence or contraband first, and then to effect an arrest. As the cases above indicate, this method of proceeding in no way taints the evidence seized prior to the actual arrest.
We further conclude the search of defendants’ residence was within the scope of a search incident to an arrest.
The case of State v. Callaghan, (1964), 144 Mont. 401, 396 P.2d 821, settled the law in Montana relating to the scope of the area to be searched incident to an arrest. This Court, in Callaghan, stated:
“* * * A search may be made pursuant to a valid arrest without a search warrant. United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 [82 A.L.R. 775] (1932); Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925); 51 A.L.R. 409. It is permissible to search a dwelling where a valid arrest had been made there Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947). The objects of such a search are the fruits and instrumentalities of the crime. However, the arresting officer *204 may not indiscriminately root through the dwelling just because there has been an arrest there. Carlo v. United States, (2nd Cir. C.A. 1961), 286 F.2d 841, cert. denied, 366 U.S. 944, 81 S.Ct. 1972, 6 L.Ed.2d 855. The search must be reasonable in scope.” 144 Mont. 407, 396 P.2d 824.
This Court found the search of the dwelling in Callaghan reasonable where two men had been arrested in the premises, and the search was one of the most likely places where the fruits and instrumentalities of the crime might be hidden.
Here, the scope of the search was for fruits and instrumentalities of the crime, as provided for by section 95-702, R.C.M.1947, and was reasonable as mandated by Callaghan. The officers did not root through the dwelling simply because of the arrest, but rather searched the most likely places of hiding.
Callaghan defines the arrestee’s dwelling, under the circumstances present there, as that within his immediate presence, which in turn is referred to in section 95-702 as the permissible scope of such a search. Likewise, the search here of defendants’ dwelling, because of the circumstances, was a search-of an area within their immediate presence. We find the search as conducted here did not infringe upon defendants’ constitutional or statutory rights. Based upon the foregoing, the search of defendants’ residence was not unreasonable, nor overly broad in scope.
As both the search and arrest were conducted in a constitutionally permissible manner, we affirm the judgment convicting defendants on both counts of criminal possession of dangerous drugs.
We note there was much emphasis in argument by counsel for the parties, and in questions from this Court concerning the validity of a condition of probation authorizing a warrantless search of probationers. As our holding above disposes of this case, this issue need not be reached in this opinion. However, we determine that limited discussion of a central facet of the issue is necessary.
Defendants contend that execution of a probationer search clause by law enforcement officers can never be a proper condition of probation. In so arguing, defendants rely primarily upon the *205 decision in United States v. Consuelo-Gonzalez, (9th Cir. 1975), 521 F.2d 259, wherein it was held that execution of a search clause by law enforcement personnel was not in keeping with the Federal Probation Act, 18 U.S.C. § 3651, as amended, although execution of such a clause by a probation officer is in keeping with the Act.
The distinction between probation and police officers is attributable to the fact that the Federal Probation Act has been interpreted by the federal courts as emphasizing reformation and rehabilitation, rather than contemplating the dual objectives of rehabilitation and protection of the public.
The Montana sentencing statute, section 95-2206, R.C.M.1947, states that any reasonable conditions deemed necessary for rehabilitation or for the protection of society may be imposed. Either or both of these objectives may be considered when imposing sentence. This statute has at no time been interpreted to emphasize rehabilitation alone, as has the Federal Probation Act. Thus, we conclude a search clause as a condition of probation need not relate solely to the objective of rehabilitation. The court, in Consuelo-Gonzalez, admitted as much in stating:
“* * * It is obvious, however, that opinions differ as to what controls are improper, and we express no opinion here regarding the extent to which the states constitutionally may impose conditions more intrusive on the probationer’s privacy than those we here have indicated are proper under the Federal Probation Act. * * *” 521 F.2d 266.
Nonetheless, the distinction drawn by the court in Consuelo-Gonzalez does nothing but encourage law enforcement personnel to go to the probation officer, who can then search the probationer pursuant to the search clause. In our view, such a procedure is nothing more than an unnecessary game of obstruction. There is no doubt that inquiry into the private life of a probationer is a necessary prerequisite to rehabilitation. As stated by the court in Consuelo-Gonzalez, “Probation authorities also have a special and unique interest in invading the privacy of probationers.” 521 F.2d 266.
*206 The more rational approach is that outlined in People v. Bremmer, (1973), 30 Cal.App.3d 1058, 106 Cal.Rptr. 797:
“* * * A condition of probation that subjects a convicted person to search and seizure at any time may serve a useful purpose by providing a workable alternative to imprisonment of the convicted person. Patently, the constitutional rights of a probationer-like the rights of those convicts who have been imprisoned-are circumscribed by the judgment of conviction and not coterminous with those possed by persons whose status remains unimpaired by conditions of probation imposed by court order. The probationer, like the parolee, has what is euphemistically known as a reduced expectation of privacy. (Citing cases.) * * *” 106 Cal.Rptr. 800.
In addressing the situation involving execution of a search clause by a police officer, the court in Bremmer noted:
“Since a peace officer’s primary concern lies with enforcement of the law and not with rehabilitation of a probationer, the officer’s exercise of authority is ordinarily activated only by violations, or seeming violations, of public order and safety. When a known probationer subject to warrantless search is discovered conducting himself in a manner that suggests a resumption of the misconduct that brought about the condition of probation, a peace officer may exercise the authority of a general search order to search. The officer’s search is a search on suspicion only, but a suspicion grounded on present activity as related to past performance, * * *” 105 Cal.Rptr. 802.
Under the rationale of Bremmer it is plain that the search of defendants in this case was reasonable. The search conducted here not only protected the public, but promoted the rehabilitation of defendants as well. All have agreed that defendants have benefited considerably from the experience of this case.
We therefore conclude that execution of a probationer search clause by law enforcement personnel, being instrumental in achieving the objectives of probation, is a proper condition of probation.
The judgment of conviction is therefore affirmed.
*207 MR. CHIEF JUSTICE HASWELL, and MR. JUSTICE HARRISON concur.