THE STATE OF MONTANA, PLAINTIFF AND RESPONDENT, v.
ARTHUR HULL, DEFENDANT AND APPELLANT.

No. 11966.
Submitted April 16, 1971.
Decided August 6, 1971.
Rehearing Denied September 2, 1971.
487 P.2d 1314.

8

MR. JUSTICE DALY, deeming himself disqualified, did not participate.

William L. Baillie, argued, Smith, Emmon & Baillie, Great Falls, for appellant.

J. Fred Bourdeau, argued, Arthur G. Matteucci, argued, Great Falls, Robert L. Woodahl, Robert Gannon, argued, Helena, for respondent.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

Defendant Arthur Hull appeals from a judgment of conviction of the crime of possession of dangerous drugs entered upon a jury verdict in the District Court of Cascade County and from the three year prison sentence imposed thereon. At the time of argument of this appeal defendant had served part of his sentence at the state prison and been paroled.

Defendant is a 23 year old airman in the United States Air Force stationed at Malmstrom Air Force Base in Great Falls. On the evening of January 20, 1970 he was present at a party in a residence occupied by Donna Raffety (sometimes spelled Rafferty), located at 305½ Eighth Avenue South in Great Falls. This house had been under surveillance by the Great Falls Police Department for suspected drug activity prior to and up to the time of the occurrences of January 20 forming the basis of the instant case.

On the afternoon of January 20, a police informer had advised Detective Cook of the Great Falls police that a ''pot party'' was going to be held in the Raffety house that evening and he had been invited. That evening about 10:00 p.m. the in-

former telephoned Detective Cook and the two drove out to the Raffety residence in a police car. At that time Detective Cook observed the house, saw some lights on, saw several cars parked in the area both in the alley and in the street, and heard music and talking emanating from the house indicating to him the presence of several people in the house and that a party might be going on. The informer left the car, went into the house, remained there for 10 to 15 minutes, and came back to the car where Detective Cook was waiting. The informer told Detective Cook there was "hash" in the house, that people therein were smoking it, and named several persons present, including defendant Arthur Hull.

Detective Cook, after driving the informer home, went to the police station where the officer in charge contacted a deputy county attorney for advice and a raid was organized. Approximately seven police officers, five in uniform and two not in uniform, returned to the Raffety residence about 11:30 p.m. After surrounding the house, Detective Dull, in plain clothes, approached the back door and knocked. Sandra Atkinson, one of the persons in the home, answered the knock and opened both the back door and an outside storm door. When she did this and before any conversation took place, Detective Dull testified that he smelled the strongest smell of burning marijuana he had ever experienced. At this point Detective Dull informed Sandra Atkinson, at least, that she was under arrest for possession of dangerous drugs. All the police officers then entered the house and informed some 15 persons present that they were all under arrest on the same charge. Although the testimony is disputed, the police indicated that all persons were advised of their rights including the "Miranda warning."

At the time of the police officers' entry into the house, Detective Cook testified that he "saw some drugs, pharmaceutical drugs, prescriptions, bottles, sitting around the room" and smelled the odor of burnt hashish or marijuana in addition to incense. No marijuana or hashish was observed visually by the officers at the time of their original entry.

At the time the police entered the house, Defendant Hull was sitting on a stool in the middle of the living room floor playing a musical instrument described as a sitar. He continued playing after their entry and officers observed his left hand going to his pocket several times. He indicated to Detective Cook he was trying to find a ''pick'' for his sitar. Defendant was searched by Detective Cook who found a small white pill with an ''s'' on one side and a split line on the reverse side, in defendant's pocket. Defendant was taken to the police station and booked for possession of dangerous drugs.

The entry into the Raffety house, the arrests of the occupants, and the search of their persons and the premises was conducted without either an arrest warrant or a search warrant.

The evidence secured at the Raffety residence was placed in the evidence vault at the police station. On April 8, 1970 the pill taken from defendant was delivered by Detectives Hall and Dull to Dr. John Pfaff, Jr., a physician and forensic pathologist, at his office in the Columbus Hospital in Great Falls. Dr. Pfaff subsequently analyzed the pill and reported that it contained amphetamine.

Defendant was charged by direct information with the crime of possession of dangerous drugs alleged to have been committed by wilfully, wrongfully and unlawfully having in his possession an amphetamine pill in violation of section 54-133, R.C.M.1947. Defendant entered a plea of ''not guilty'' to this charge.

Prior to trial, defendant moved (1) to suppress all evidence obtained by the alleged unlawful search and seizure, (2) to compel the state to disclose the identity of the informer, and (3) to require the state to produce all items of evidence to be introduced at the trial.

An evidentiary hearing was held on this motion prior to trial. Detective Cook, Detective Dull and Officer Ehnes testified to events leading up to and including police entry into the Raffety house, the arrest and search of defendant, and the seizure of the alleged amphetamine pill from his person. Defendant called

the alleged informer as a witness who, after admitting that he went to the Raffety residence on January 20, refused to answer any further questions on the grounds of self-incrimination. La-Fond's refusal to further testify on this basis was upheld by the district court. Defendant called the attorney representing one of the other persons charged with reference to the events of January 20 at the Raffety house in an effort to impeach the testimony of Detective Cook concerning what the alleged informer told him prior to the raid.

After the state's objection to this interrogation was sustained by the court, defendant made an offer of proof to the effect such witness, if permitted, would testify that on a prior occasion the alleged informer had stated in the presence of the witness that he had seen no drugs, had named no persons in the Raffety house, had smelled no marijuana, had tried to sell drugs but was turned down, that a party was going on in the Raffety residence and that this was the information he communicated to Detective Cook prior to the raid. The district court denied this offer of proof.

At the conclusion of the evidentiary hearing, the district court denied defendant's motion to suppress and motion to disclose the identity of the informer.

The trial was held about a week later. The district court granted the state's initial motion that ''no mention be made of the informer or his reliability or any reasonableness of the search.'' Four witnesses testified for the state at the trial, and a single witness testified for defendant.

Detectives Cook and Dull testified for the state concerning entry into the Raffety residence and occurrences thereafter, including the arrest of defendant and the search and seizure of the alleged amphetamine pill from his person. Their testimony traced the delivery of the pill to Detective Hall, the marking of the pill as evidence, and the placing of the pill in the evidence vault at the Great Falls police station.

During the questioning of Detective Cook by defense counsel, defendant made an offer of proof that the alleged informer,

prior to police entry into the Raffety house, told Cook nothing specific about defendant Hull, his possession of dangerous drugs, or his violation of any narcotics or dangerous drug laws; that the officers intended to enter the Raffety house by force if necessary to make an arrest, but more probably to make a search; that Cook had no probable cause to enter the Raffety residence; and that Cook had no search warrant to enter the house. The court refused defendant's offer of proof.

Detective Hall, for the state, testified that he picked up the alleged amphetamine pill from the evidence vault, and, accompanied by Detective Dull, delivered it to Dr. Pfaff for analysis.

Dr. Pfaff, called by the state, testified he took the pill labeled "A. Hull" and tested it. Two tests were conducted: an ultraviolet light absorption test and a "thin layer chromatography" test. He testified that he crushed the pill into a granular powder, used approximately half of it in conducting these tests, and described the tests in detail. Dr. Pfaff confirmed the presence of "more than a trace" of amphetamine based on these tests. He did not test for any other ingredients and was unable to testify as to any markings on the pill other than the labeling "A. Hull." Dr. Pfaff did not test for and was unable to state whether the amphetamine disclosed by the tests was methamphetamine, dextroamphetamine, levoroteriamphetamine, or one of the other amphetamines.

At the conclusion of the state's case in chief, defendant moved for an acquittal or in the alternative for a directed verdict on the following grounds: (1) failure to prove that defendant's acts were done "wilfully, wrongfully, unlawfully and feloniously" as charged in the information, (2) failure to prove defendant's possession and control of an amphetamine pill, (3) failure to produce the alleged amphetamine pill in court and to permit defendant to examine it, and (4) failure to prove the presence or quantity of amphetamine in the pill.

The transcript reveals that during discussion and argument on this motion by counsel before the court in chambers outside the presence of the jury, counsel for defendant had not been

able to examine the pill or have it analyzed despite the fact that the state had orally been directed by the court to permit defendant's counsel to do so, but that defendant's counsel had not previously so advised the court. No motion for continuance was made by defendant at any time although the court specifically advised the defendant's counsel that if he had asked the court for more time to examine it, such request would have been granted. The court denied defendant's motion for acquittal or alternatively for a directed verdict.

Defendant called but a single witness at the trial, James LePard, a pharmacist employed by a Great Falls drug store. The gist of his testimony was that although he had not seen or examined the pill in question, he could think of only "one kind of pill with an 's' on it and a crease down the side" and that such pill was a diet pill containing no amphetamine, but on the contrary containing instead methamphetamine, hydrochloride, thyroid and atropine. On cross-examination by the state, LePard testified that he could not absolutely state, without examining the pill in question, "that this is the pill which [he] think[s] it to be." He also testified that the pill about which he was testifying was an appetite depressant and could be used as "speed," a "psychic elevator or mood elevator type of thing" although its purpose, as he dispensed it, was as an appetite depressant. He admitted that it would probably be dangerous if misused.

At the conclusion of all the evidence, defendant's motion for an acquittal or directed verdict was denied.

The case was submitted to the jury who convicted the defendant. Defendant moved for a new trial which the district court denied. Defendant was sentenced to three years imprisonment with credit for time spent in jail prior to trial. Defendant now appeals from the judgment of conviction.

We will restate the underlying issue for review upon appeal in the following manner:

(1) Was the search of defendant and seizure of the alleged amphetamine pill constitutionally prohibited?

14

(2)   Did the district court err in denying defendant identification of the alleged informer?

(3)   Did the district court err in sustaining witness LaFond's refusal to testify on the grounds of self-incrimination?

(4)   Was the state required to introduce in evidence at the trial the white pill taken from defendant and prove the quantity of amphetamine therein?

(5)   Sufficiency of continuity of the chain of evidence respecting the alleged amphetamine pill.

(6)   Did the district court err in refusing defendant's proposed instructions Nos. 1 and 31?

The first issue is one of the principal issues for review upon appeal. The thrust of the state's argument is that the search of the defendant and the discovery of the amphetamine pill on his person was incident to a lawful arrest based on probable cause and therefore constitutionally permissible under the "search and seizure" provisions of the federal and state constitutions. Defendant, on the other hand, argues that no probable cause existed for his arrest or for the search of his person and seizure of the alleged amphetamine pill without either an arrest warrant or a search warrant. Accordingly, defendant contends, the search and seizure were constitutionally prohibited, and denial of his motion to suppress was reversible error.

The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Evidence seized by the state in violation of constitutional search standards is inadmissable in evidence in state court criminal proceedings under the "due process" clause of the Fourteenth Amendment to the United States Constitution. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. State court

criminal prosecutions are subject to United States constitutional Fourth Amendment search standards in their entirety. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726.

A well recognized exception to the Fourth Amendment requirement of a search warrant exists where the search and seizure are made as an incident to a lawful arrest.

The instant case involves a warrantless arrest and a warrantless search of defendant's person resulting in the discovery of alleged contraband used to procure his conviction for possession thereof. The controlling issue here is whether defendant's arrest was lawful at the outset, thereby justifying the subsequent incidental search of his person and seizure of the alleged contraband from his pocket. In this respect the instant case is readily distinguishable and must not be confused with those cases involving a search of the premises based upon probable cause.

The lawfulness of defendant's arrest must be measured by the standards prescribed in section 95-608, R.C.M.1947, the pertinent part of which provides:

"Arrest by a peace officer. A peace officer may arrest a person when:

"* * *

"(d) He believes on reasonable grounds, that the person is committing an offense, or that the person has committed an offense and the existing circumstances require his immediate arrest."

We hold that in this case the officers had reasonable cause to believe that defendant was committing an offense. At the time of their entry into the Raffety house they had been advised by an informer that a "pot party" was in progress, that defendant was a participant therein, and that "hash" was being smoked in the Raffety house at the "pot party." The credibility of the informer was established beyond any reasonable argument by prior police use of the same informant on at least ten previous occasions in the preceding four months, involving some eight dangerous drug arrests based in whole or in part upon information supplied by this informer.

Detective Cook testified that the Raffety house had been under surveillance by the police department for some time as a center of drug activity or drug use, and that known drug users from whom dangerous drugs had been taken had been seen coming and going from the Raffety house. Detective Cook testified that Officer Warrington, who had the premises under observation on the night of January 20, advised him prior to the raid that there was much activity there that night. Detective Cook from his own observation could see that a party was in progress. Detective Dull smelled burning marijuana emanating from the house prior to entry therein and the subsequent arrest and search of the occupants.

The principal thrust of defendant's argument is that the arresting officers had no reasonable grounds or probable cause for believing that he individually, as distinguished from others present in the house, was involved in the possession of dangerous drugs. Therefore, he argues, his arrest was unlawful and the constitutional and statutory basis for the subsequent search of his person fails.

As an abstract proposition divorced from the facts of this case, there is some merit to defendant's argument. The mere fact that a person is on premises where officers have reason to believe there are drugs will not justify his arrest nor a search of his person. State ex rel. Glantz v. Dist. Court, 154 Mont. 132, 461 P.2d 193 and cases cited therein. But the facts of this case establish considerably more than defendant's mere presence on the premises. There a "pot party" was in progress, defendant was a guest at this party and a participant therein, and the aroma of burning or burnt marijuana was emanating from the premises, all of which was known to the officers prior to their entry, arrest, and search of the partygoers. As such, the defendant's connection with the illegal activities then and there in progress extends beyond his mere presence on the premises where officers have reason to believe there are drugs.

The situation of Linda Marie Pickett in *Glantz* is readily distinguishable from the instant case. There the officers in exe-

cuting a search warrant on residential premises not only located dangerous drugs in certain locations on the premises but arrested Pickett, who happened to be present in the house, without a warrant although there was nothing to connect her with the house, the drugs, or any illegal activity beyond her mere pres ence in the house at the time the search of the premises was made in execution of the search warrant. Accordingly, we there held that her arrest without a warrant and subsequent search of her person to be unlawful. Here, the ''pot party'' in progress, defendant's participation therein, and the aroma of burning or burnt marijuana distinguish the instant case.

State v. Langan, 151 Mont. 558, 445 P.2d 565, and its companion case, State v. Kurland, 151 Mont. 569, 445 P.2d 570, lend no support to defendant's position in the instant case, being clearly distinguishable on the facts. These cases involved an illegal entry into a residence under a void search warrant for the premises, which we ruled could not be upheld as a search incident to a lawful arrest.

We hold therefore that under the facts of this case the search and seizure of the alleged amphetamine pill was constitutionally and statutorily permissible as an incident of a lawful arrest.

The second issue for review is whether the district court erred in denying defendant identification of the alleged informer. This is a spurious issue under the facts of the instant case. At the evidentiary hearing on the motion to supress prior to trial, defendant's counsel not only called the alleged informer LaFond as a witness but offered to prove that on a prior occasion LaFond stated he told Detective Cook that he had seen no drugs, had named no persons in the Raffety house, had not smelled marijuana, had tried to sell drugs but was turned down, that a party was going on, and that he reported the same to Detective Cook on his return to the police car shortly before the raid and arrest of the defendant. Where defendant already knew the identity of the informer, there is no error in refusing to require the state to name him.

The next issue for review concerns whether the district

18

court erred in upholding LaFond's refusal to testify on the grounds of self-incrimination at the hearing on the motion to suppress. Defendant offered to prove at this hearing that La-Fond on another occasion had told others that he tried to sell dangerous drugs to persons in the Raffety house on the evening of January 20 but was turned down. Section 54-129(k), R.C.M. 1947, makes an offer to sell dangerous drugs equivalent to a sale of dangerous drugs subjecting the offender upon conviction to a sentence of one year to life. As no evidence of immunity from prosecution concerning LaFond was presented, any such questioning tends to incriminate him and he is entitled to the constitutional protection of the Fifth and Fourteenth Amendments to the United States Constitution and similar state constitutional and statutory privileges. Accordingly, the district court committed no error.

The fourth issue for review is whether the state was required to introduce in evidence at defendant's trial the alleged amphetamine pill and prove the quantity of amphetamine therein. We are aware of no requirement that the alleged dangerous drug must be introduced at the trial. We have previously affirmed a conviction where this was not done. State v. Dunn, 155 Mont. 319, 472 P.2d 288. Testimonial proof of possession of a dangerous drug is sufficient to sustain a conviction, as is the case here. In the instant case Dr. Pfaff testified there was "more than a trace" of amphetamine in the pill but that he made no quantitative determination of the amount thereof. Where, as here, the proof establishes the existence of a prohibited dangerous drug, such proof will sustain a conviction without proof of the precise quantity thereof.

The next issue for review is whether the required continuity of possession and identification of the alleged amphetamine pill from the time it was taken from defendant's pocket to the time of its testing by Dr. Pfaff was established. Defendant argues that because he was denied an opportunity to inspect the pill, coupled with Dr. Pfaff's inability to testify as to the markings on the pill, there is a fatal failure of proof by the state.

We hold that the state's failure to produce the pill for inspection by defense counsel was waived and in any event constitutes harmless error. The pill itself was never introduced in evidence at the trial. Although the court orally in chambers ordered the state to produce the pill for defendant's inspection and the deputy county attorney agreed, the pill had been reduced to powdered form by Dr. Pfaff in connection with his testing procedures. Thus there was no pill for inspection although there may have been some powdered residue left in the envelope not used by Dr. Pfaff. In any event, the court was not apprised of these facts prior to trial. No motion for continuance was made by defendant on this account. Additionally, the court advised defendant's counsel when the point came up during the progress of the trial that if he had asked the court for more time to examine it, the request would have been granted. Under such circumstances, there is no reversible error.

We hold the continuity in the chain of evidence tracing the pill from defendant's person to Dr. Pfaff's testing of it is sufficient. The pill taken from defendant was marked, placed in the evidence vault, and subsequently delivered to Dr. Pfaff who testified that the pill he tested was marked "A. Hull." His inability to testify as to its other markings and the state's lack of identification of the pill at all times in terms of a small, white pill with an "s" on one side and a split line on the reverse side does not render the chain of identification incomplete where an alternate means of identification is used, as here.

The final issue for review relates to the refusal of the court to give defendant's offered instructions Nos. 1 and 31. Proposed instruction No. 1 in substance provides that before the jury could convict defendant, it was necessary to find that he possessed an amphetamine pill in sufficient quantity to be dangerous. This is not the law. The Montana Dangerous Drug Act simply does not require proof of any specific quantity of a dangerous drug in order to constitute a violation.

Defendant's offered instruction No. 31 provided in essence that if a jury had reasonable doubt concerning whether

the pill contained something other than amphetamine, or if the jury found that the pill contained methamphetamine, dextro-amphetamine or levoroteriamphetamine or some other ingredient not charged in the information, it must return a "not guilty" verdict. Neither is this the law. The other ingredients in the pill besides amphetamine are immaterial. Any "product, derivative, compound or preparation" of the listed dangerous drugs is prohibited. Amphetamine, dextroamphetamine, methamphetamine are listed as dangerous drugs in the Act. Under such circumstances, the nonlisting of levoroteriamphetamine and the possibility that this was the substance involved in the pill is not fatal, levoroteriamphetamine being one of the isomers of amphetamine.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON, and CASTLES, concur.

MR. JUSTICE DALY, deeming himself disqualified, did not participate in this Opinion.