No. 14754

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

GARY ALLEN,

Defendant and Appellant.

Appeal from:   District Court of the Third Judicial District,
In and For the County of Powell,
Hon. Robert J. Boyd, Judge presiding.

Counsel of Record:

For Appellant:

Tipp, Hoven & Skjelset, Missoula, Montana
Tom Frizzell argued, Missoula, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Ted Mizner argued, County Attorney ~~General~~, Deer Lodge,
Montana

Submitted: March 25, 1980

Decided:   MAY 1 3 1980

Filed:   MAY 1 3 1980

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Defendant was convicted by a jury of criminal possession of dangerous drugs in the Third Judicial District, County of Powell, on February 13, 1979, and received a deferred sentence.

On September 28, 1978, three officers responded to a complaint by John Wilson, an apartment building manager, that there was a loud party taking place in an apartment rented by one Annie Smith. The officers proceeded to Ms. Smith's apartment but the noise and music was under control when they arrived. However, they did smell the strong odor of burning marijuana, though they could not determine exactly the apartment from which it emanated, as there were two apartment doors approximately four feet apart. The officers knew that the defendant was a frequent visitor at Ms. Smith's apartment. and that both defendant and Ms. Smith were drug users. One deputy approached the door to the apartment beside Ms. Smith's and was met by a tenant who informed the officer that the apartment Ms. Smith rented was across the hall.

The officers then approached Ms. Smith's apartment and one of the officers knocked at the door which, they testified, swung open at the force of the knock. When the door opened the officers smelled a strong odor of burning marijuana. and saw Tammy Frazier, a known juvenile drug user. The officers walked in without express permission. One of the officers noticed some marijuana and drug paraphernalia on a coffee table.

They then arrested the people in the apartment and advised them of their Miranda rights. After the arrests were made, the officers asked Ms. Smith if they could search

her apartment. They did not have either a search or arrest warrant. Ms. Smith initially refused to consent to the search, but after some coaxing by the officers plus <u>their informing</u> <u>her</u> <u>that</u> <u>they</u> <u>would</u> <u>get</u> <u>permission</u> <u>from</u> <u>the</u> <u>landlord</u> <u>to</u> <u>search</u>, she finally agreed to the search. Defendant, after arguing with the officers, eventually assisted them in their search, giving them some marijuana which had been located under a coffee table and was not in plain view and some stems and seeds from the kitchen. Defendant had no marijuana on his person.

Ms. Smith rented the apartment and was not dependent on her parents for support although she was only sixteen years old. Defendant alleged he was permanently residing in the apartment with Ms. Smith and that he paid rent for the apartment but had no contractual relationship with the landlord.

After his arrest, defendant moved to suppress the items seized in the search and dismiss the information on the grounds that the officers' entry was unlawful and that the search was in violation of his constitutional rights. A suppression hearing was held on December 14, 1978, and briefs were filed. The motion to suppress was denied. At the trial, the jury found defendant guilty, and he was sentenced by the District Court. From this judgment and the denial of the motion to suppress, defendant brings this appeal.

Defendant-appellant presents the following issues for review by this Court:

1. Does a person permanently living in an apartment have standing to suppress evidence for an unlawful entry and search when he was present on the premises?

2. Does the smell of marijuana constitute sufficient probable cause to make a warrantless entry into and search of a home?

3. Assuming probable cause, can the police enter a private residence without a warrant, exigent circumstances, or an invitation?

4. Did Annie Smith's consent to search defeat any right of defendant to object?

Defendant initially contests the officers' entry into the apartment where he was residing. He insists probable cause here was based solely upon the smell of marijuana and that this is insufficient for a search warrant, let alone a warrantless entry. Defendant submits he was permanently residing at his fiancee's apartment and that under recent Supreme Court authority the test for Fourth Amendment violations is whether the defendant had a legitimate expectation of privacy in the place searched. Defendant argues he had a legitimate expectation of privacy because the place searched was his residence. Finally, defendant asserts that Montana's constitutional right to privacy protects against the type of warrantless entry which took place here.

The State contends that Fourth Amendment rights are personal rights which may not be asserted vicariously and argues that defendant does not have standing to object to the search of Annie Smith's apartment. The State further contends that the defendant did not have a legitimate expectation of privacy under the circumstances that existed in this case. The State argues that Annie Smith's consent was valid and sufficient to override defendant's objection to the search. Defendant, it is asserted, also waived any objection he had to the search when he aided the officers in

the search of the apartment. The State insists that the officers had sufficient probable cause to enter the apartment and to make the arrests, and that once the arrest was complete, the officers had the right to make a search incident to an arrest.

Initially we face the question of whether defendant had standing to suppress the evidence seized. Defendant contends that under the United States Supreme Court holdings in Jones v. United States (1960), 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, and Rakas v. Illinois (1978), 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387, he had standing to contest an unlawful entry and search of the apartment.

In Jones the defendant was present at the time of the search of an apartment which was owned by a friend. The friend had given Jones permission to use the apartment and a key to it, with which Jones had admitted himself on the day of the search. He had a suit and shirt at the apartment and had slept there for a night; however, his home was elsewhere. At the time of the search, Jones was the only occupant of the apartment, the lessee having gone away for several days. Based on the above facts the United States Supreme Court held that while one wrongfully on the premises could not move to suppress evidence obtained as a result of searching them, "anyone legitimately on premises where a search occurs may challenge its legality." 362 U.S. at 267.

Despite the urging by the defendants in Rakas to relax the rule in Jones, the Court declined to extend the rule of standing in Fourth Amendment cases and limited the broad language of Jones. It stated:

> "We do not question the conclusion in Jones that
> the defendant in that case suffered a violation
> of his personal Fourth Amendment rights if the

search in question was unlawful. Nonetheless, we believe that the phrase 'legitimately on premises' coined in Jones creates too broad a gauge for measurement of Fourth Amendment rights. For example, applied literally, this statement would permit a casual visitor who has never seen, or been permitted to visit the basement of another's house to object to a search of the basement if the visitor happened to be in the kitchen of the house at the time of the search. Likewise, a casual visitor who walks into a house one minute before a search of the house commences and leaves one minute after the search ends would be able to contest the legality of the search. The first visitor would have absolutely no interest or legitimate expectation of privacy in the basement, the second would have none in the house, and it advances no purpose served by the Fourth Amendment to permit either of them to object to the lawfulness of the search.

"We think that Jones on its facts merely stands for the unremarkable proposition that a person can have a legally sufficient interest in a place other than his own home so that the Fourth Amendment protects him from unreasonable governmental intrusion into that place. [Citation omitted.] In defining the scope of that interest, we adhere to the view expressed in Jones and echoed in later cases that arcane distinctions developed in property and tort law between guests, licensees, invitees, and the like, ought not to control. [Citations omitted.] But the Jones statement that a person need only be 'legitimately on premises' in order to challenge the validity of the search of a dwelling place cannot be taken in its full sweep beyond the facts of that case.

"Katz v. United States, 389 US 347 (1967), provides guidance in defining the scope of the interest protected by the Fourth Amendment. In the course of repudiating the doctrine derived from Olmstead v. United States, 277 US 438 (1928), and Goldman v. United States, 316 US 129 (1942), that if police officers had not been guilty of a common-law trespass they were not prohibited by the Fourth Amendment from eavesdropping, the Court in Katz held that capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place. [Citations omitted.] Viewed in this manner, the holding in Jones can best be explained by the fact that Jones had a legitimate expectation of privacy in the premises he was using and therefore could claim the protection of the Fourth Amendment with respect to a governmental invasion of those premises,

even though his 'interest' in those premises
might not have been a recognized property in-
terest at common law. [Citation omitted.]"
Rakas v. Illinois, 439 U.S. at 141-43.

The Court went on to factually distinguish Rakas from Jones

and stated:

". . . Jones not only had permission to use the
apartment of his friend, but had a key to the
apartment with which he admitted himself on the
day of the search and kept possessions in the
apartment. Except with respect to his friend,
Jones had complete dominion and control over
the apartment and would exclude others from it.
Likewise in Katz, the defendant occupied the
telephone booth, shut the door behind him to
exclude all others and paid the toll, which 'en-
titled [him] to assume that the words he utter[ed]
into the mouthpiece [would] not be broadcast to
the world.' [Citation omitted.] Katz and Jones
could legitimately expect privacy in the areas
which were the subject of the search and seizure
each sought to contest. . ." 439 U.S. at 149.

Similarly, in this case, defendant had a legitimate

expectation of privacy in the apartment searched. He shared

it with his girlfriend and except with respect to her had

complete dominion and control over the apartment and could

exclude others from it. Here, as in Jones and Katz, the

defendant had a legitimate expectation of privacy in the

areas subject to the search and seizure. Defendant was,

therefore, entitled to contest the legality of the search

and seizure.

Once it has been determined that defendant was entitled

to contest the legality of the search and seizure, our

analysis must shift to the question of whether the chal-

lenged search and seizure violated defendant's Fourth Amend-

ment rights. "That inquiry requires a determination of

whether the disputed search and seizure has infringed an

interest of the defendant which the Fourth Amendment was

designed to protect." Rakas v. Illinois, 439 U.S. at 140.

Defendant contends that the police lacked sufficient probable cause to make a warrantless entry into the apartment. He concludes, therefore, that the entry was unlawful and any evidence seized should be suppressed. The State, on the other hand, contends that under the facts and circumstances of this case the police officers had probable cause to believe an offense had been or was being committed before they ever entered the apartment, and therefore, they had the right to enter the apartment and make the arrest.

As the arrest, search and seizure were made without warrants, the outcome of this case rests on a determination of whether or not the search and seizure were made incident to a lawful arrest. The controlling issue, then, is whether defendant's arrest was lawful at the outset, thereby justifying the subsequent search and seizure of the contraband which led to defendant's conviction.

For purposes of this decision it is necessary to place the discussion of the plain view seizure of the marijuana on the coffee table and the subsequent search of the rest of the house on different planes. Our reasons for doing so will soon become obvious.

The lawfulness of defendant's arrest must be measured by the standards prescribed in section 46-6-401, MCA. State v. Hull (1971), 158 Mont. 6, 487 P.2d 1314, 1319. This section provides in part:

"A peace officer may arrest a person when:

". . .

"(4) he believes on reasonable grounds that the person is committing an offense or that the person has committed an offense and the existing circumstances require his immediate arrest."

-8-

Section 46-6-106, MCA, provides:

"**Manner of arrest without warrant.** A peace
officer or person making an arrest without a
warrant must inform the person to be arrested
of his authority, if any, of the intention to
arrest him, and the cause of the arrest, ex-
cept when the person to be arrested is actually
engaged in the commission of or in an attempt
to commit an offense or is pursued immediately
after its commission or after an escape or when
the giving of such information will imperil the
arrest."

This Court has on previous occasions and under similar
factual situations had cause to decide the issues presented
here.  In State v. Hull, supra, we determined defendant's
arrest was based on reasonable grounds where, prior to their
entry, arresting officers had received information from an
informer that a "pot party" was in progress.  When the
officers arrived at the scene it was obvious from the music
and noise that a party was in progress.  They also smelled
the aroma of burning or burnt marijuana emanating from the
residence.  After being told by the informer, who had just
left the party, that there was hashish being smoked in the
house, the officers entered the residence and arrested
several persons, including defendant.  A search of defendant
yielded an amphetamine tablet.  This Court held the entry
into the residence without a warrant for purposes of effect-
ing the arrest and searching defendant incident to that
arrest was constitutionally and statutorily permissible,
because there was sufficient probable cause to do so.  Hull,
487 P.2d at 1320.

In State v. Bennett (1972), 158 Mont. 496, 493 P.2d
1077, police officers received information indicating drug
activity was taking place at defendant's apartment.  They
were also informed that one of the defendants was a drug
dealer.  Additionally, the landlady informed one of the

officers that drugs possibly were being used in defendant's apartment. Based on the landlady's complaint and information received, the officers went to defendant's apartment to investigate. When they arrived, they observed one of the defendants, a suspected drug dealer, enter the apartment. Upon approaching the apartment they noticed the odor of burning marijuana coming from the open door of the apartment. The officers entered the apartment, walked up a short stairway and observed the three defendants sitting around a table on which there was a marijuana roach and a clear plastic bag containing what they believed to be marijuana. The defendants were immediately arrested and the marijuana seized. Even though the entry and search were conducted without a warrant, this Court held the entry into the apartment to arrest and the search incident thereto constitutionally permissible. State v. Bennett, 493 P.2d at 1082.

In our discussion in Bennett, we concluded that the facts involved therein came within the exigent circumstances exceptions to the warrant requirement of the Fourth Amendment and Johnson v. United States (1948), 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436. We also indicated that, while there is no "knock and announce" rule in Montana, where an officer is attempting to make an arrest without a warrant, he has the duty to inform the person to be arrested of his authority in so acting and the cause for so acting unless the arrested party is taken in the actual commission of the offense or has escaped and is immediately pursued. 493 P.2d at 1081.

Both Hull and Bennett were recently ratified by this Court in State v. Means (1978), ____ Mont. ____, 581 P.2d 406, 35 St.Rep. 673.

-10-

While we would be remiss if we did not voice our concern here that arrest and search warrants should be used as the rule and not the exception, sufficient exigent circumstances existed here, especially due to the involvement of juveniles, to justify the warrantless entry and arrest. Therefore, under this Court's holdings in Hull and Bennett, and based on the above facts, we find the District Court properly concluded that the officers had sufficient probable cause to make the warrantless entry and arrest.

The seizure of the marijuana on the table was also proper under either a "plain view" theory or a seizure incident to a lawful arrest theory. Coolidge v. New Hampshire (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564; State v. Hull, supra; State v. Bennett, supra; section 46-5-102(3) and (4), MCA.

While the officers' initial entry into the apartment and the subsequent arrest and seizure of the marijuana on the table was valid, the so-called "consent" search of the rest of the apartment was unlawful. There is no doubt that the officers did not have authority to search the entire house. Section 46-5-102, MCA; Chimel v. California (1969), 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. The initial break in the officers' lawful conduct came when they secured Ms. Smith's "consent" to search the house by fraudulently telling her that if she failed to consent they could gain consent to search the apartment from the landlord.

When a law enforcement officer claims authority to search a home under a warrant, Bumper v. North Carolina (1968), 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797, or threatens to obtain a search warrant, United States v. Boukater (5th Cir. 1969), 409 F.2d 537, or makes a flat

assertion that he has come to search, Amos v. United States (1921), 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654, ". . . he anounces in effect that the occupant has no right to resist the search. The situation is instinct with coercion--albeit colorably lawful coercion. Where there is coercion, there cannot be consent." Bumper v. North Carolina, 391 U.S. at 550.

The officers in the instant case informed Ms. Smith that if she did not consent to the search they could secure consent from her landlord. Ms. Smith's consent was based on this fraudulent show of authority, and, as such, the consent was coerced and therefore invalid.

One other factor makes Ms. Smith's consent invalid. Section 41-5-303, MCA, of the Montana Youth Court Act, provides:

> "When a youth is detained for investigation or questioning upon a matter which could result in a petition alleging that the youth being detained is either delinquent or in need of supervision, the following requirements must be met:
>
> "(1) The youth shall be immediately and effectively advised of his constitutional rights and his rights under this chapter.
>
> "(2) The youth may waive such rights under the following situations:
>
> "(a) when the youth is under the age of 12 years, the parents of the youth may make an effective waiver;
>
> "(b) when the youth is over the age of 12 years and the youth and his parents agree, they may make an effective waiver; and
>
> "(c) when the youth is over the age of 12 years and the youth and his parents do not agree, the youth may make an effective waiver only with advice of counsel."

The record reveals that the officers failed to read Ms. Smith or the other juveniles involved here their youth court act rights. Further, in order to effectively waive her

-12-

constitutional or statutory rights, the waiver must take place with the agreement of the youth and her parents or on advice of counsel. Ms. Smith's parents were not informed nor was counsel obtained before the "waiver" of rights and "consent" to search took place. There is no question that consent to search the premises required Ms. Smith to waive her Fourth Amendment right to be free of unreasonable searches under the United States Constitution. Schneckloth v. Bustamonte (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854. Ms. Smith lacked the capacity to give this consent, and her consent to search was therefore invalid.

The State contends that defendant waived his right to object to the search when he helped the officers find the contraband, citing State v. Peters (1965), 146 Mont. 188, 405 P.2d 642. The facts of the instant case and those in Peters are distinguishable. In Peters the defendant voluntarily consented to the investigation and inspection of the calves on his ranch; here, the record reveals the defendant vehemently protested the search and informed Ms. Smith that she did not have to consent. It was only after the officers indicated they were going to search anyway that defendant helped them. These actions do not constitute a waiver by defendant of his right to object to the search. As the marijuana and seeds seized during the subsequent search of the house were "fruits" of an unlawful search, the District Court should have suppressed them. Wong Sun v. United States (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

The District Court could properly conclude that probable cause and sufficient exigent circumstances existed to justify the warrantless entry, arrest, and seizure of the marijuana on the table. The subsequent "consent" search of

-13-

the apartment, however, was unlawful, therefore the contraband seized in that "search" should have been suppressed.

The judgment of the District Court is affirmed insofar as the entry and initial search and seizure of the contraband on the coffee table. The remainder of the judgment is vacated and set aside. On oral argument it was admitted that the quantity of marijuana properly seized constituted a felony amount, and there is no allegation that the tainted evidence has any effect on the remainder seized; it is therefore unnecessary to remand the cause to the District Court as the result would be unchanged. The sentence is therefore affirmed.

_____
Justice

We concur:

_____
Chief Justice


_____

_____
Justices

Mr. Chief Justice Frank I. Haswell dissenting:

I respectfully dissent.

The majority hold that the subsequent search of the apartment violated the Fourth Amendment to the United States Constitution and the contraband seized should not have been admitted in evidence at the trial. Nonetheless, they affirm the conviction because the remaining admissible evidence is sufficient to support a conviction.

Where, as here, federal constitutional error has occurred we are required to determine whether such error constitutes harmless or prejudicial error. The test is whether this Court can declare its belief that the error was harmless beyond a reasonable doubt. Chapman v. California (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L Ed 2d 705. The majority have not addressed this question.

Here defendant was charged with possession of approximately 372 grams of marijuana, a felony. The admissible evidence to support this charge consisted of several pipes and a small bag of marijuana in plain view on a coffee table in the apartment. The subsequent unlawful search uncovered a vial of seeds, a sack of stems, several small bags of marijuana, a large bag of marijuana, several small bags of seeds, a scale, a black pipe, a $100 bill and five $1 bills. The total weight of all the marijuana, both that which was admissible and that which was not, was 387.07 grams.

I find no evidence that the small bag of marijuana on the coffee table (which is the only admissible marijuana) exceeded 60 grams in weight so as to constitute a felony. Without such proof, the evidence is insufficient to support the felony conviction. Additionally the jury could infer from the tainted evidence that defendant was a "pusher" or drug dealer because of the large amount of marijuana, the scales, and the money. For these reasons I cannot say beyond a reasonable doubt that the inadmissible evidence did not contribute to defendant's conviction. Fahy v. Connecticut

(1963), 375 U.S. 85, 84 S.Ct. 229, 11 L Ed 2d 171, nor that such evidence was harmless beyond a reasonable doubt.  Chapman v. California, supra.

I would vacate the conviction and remand the case to the District Court for a new trial.

_____
Chief Justice


I concur with Chief Justice Haswell's dissent.

_____
Justice